UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**EDGARDO ACEVEDO CANCELA**, *et al.*,

    Plaintiffs,

v.                                                       Case No. 8:23-cv-2480-MSS-UAM

**SHERIFF GRADY JUDD**, *et al.*,

    Defendants.
_____/

**O R D E R**

Acevedo Cancela and his wife, Escobar Caban, sue Sheriff Judd and Deputy Sean Jones in a federal civil rights complaint. (Doc. 1) Sheriff Judd and Deputy Jones moved to dismiss the complaint (Doc. 16), and the Plaintiffs filed a response. (Doc. 18) After reviewing the complaint, the motion, and the response, the Court **GRANTS** the motion (Doc. 16) to dismiss.

**FACTS**

In the complaint, the Plaintiffs assert that Deputy Jones violated federal law by falsely arresting and maliciously prosecuting Acevedo Cancela (Count One and Count Two) and that Sheriff Judd violated state law by falsely arresting and maliciously prosecuting Acevedo Cancela (Count Three and Count Four). (Doc. 1 at 9–15) Also, the Plaintiffs sue Deputy Jones under state law for defamation, libel, and intentional infliction of emotional distress and sue Sheriff Judd and Deputy Jones under state law for loss of consortium. (Count Five, Count Six, and Count Seven) (Doc. 1 at 9–19)

The Plaintiffs allege that, on May 21, 2020, in the early morning, Deputy Jones executed a warrant authorizing a search for child pornography at the Plaintiffs' home. (Doc.

1 at 4) The Plaintiffs allege that law enforcement officers did not find any evidence of child pornography at their home. (Doc. 1 at 4) A police report attached to the complaint states that a sheriff's deputy and an investigator interviewed the Plaintiffs' children, who were ten and thirteen, and both denied that anyone had inappropriately touched them. (Doc. 1-7 at 2–3) The Plaintiffs allege that Acevedo Cancela spoke to an attorney, who advised to permit police to conduct the search if police had a warrant. (Doc. 1 at 5)

The Plaintiffs allege that, during the search, Deputy Jones advised them of their *Miranda*[1] rights and seized their mobile telephones and Acevedo Cancela's Apple watch. (Doc. 1 at 5–6) The Plaintiffs allege that a sheriff's deputy, who worked with Deputy Jones, obtained a warrant to search Acevedo Cancela's mobile telephone and Apple watch. (Doc. 1 at 6) The Plaintiffs allege that Deputy Jones asked Acevedo Cancela to provide his password for the mobile telephone and the Apple watch. (Doc. 1 at 6) The Plaintiffs allege that, when Acevedo Cancela asked to speak with his attorney before providing the password, Deputy Jones refused to allow him and instead arrested him for promoting the sexual performance of a child and possessing child pornography. (Doc. 1 at 6)

The affidavit in support of Acevedo Cancela's arrest stated the following facts (Doc. 1-6 at 2–5):

> CyberTips are reported to the National Center for Missing and Exploited Children (NCMEC) CyberTipline, a congressionally mandated reporting mechanism for cases of child sexual exploitation including child pornography, online enticement of children for sex acts, molestation of children outside the family, sex tourism of children, child victims of prostitution, and unsolicited obscene material sent to a child.

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

On 10-23-2019, your Affiant received CyberTipline Report numbers 53765401, 50486542, and 53531060 for investigative follow up.

Your Affiant reviewed the CyberTipline Reports, and learned Facebook submitted the information to NCMEC CyberTipline after a Facebook user uploaded and received illicit images using their Facebook account. I obtained the following information from said CyberTipline Reports:

CyberTipline Report #53765401:
User or person being reported:
Name: Austin Rose
Date of Birth: 06-01-1980
Approximate Age: 39
Email Address: austinrose9990@yahoo.com
ESP User ID: 100026600527202
Profile URL: http://www.facebook.com/austin.rose.125760
IP Address: 173.171.115.244
(Login) on 08-18-2019 at 13:24:09 UTC

Your Affiant viewed the files contained within this CyberTipline Report and observed that user "Austin Rose" sent at least five files depicting a pre-pubescent female inserting an object into her vagina to several other Facebook users (Ramiro Acosta, Daniel Vazquez, Tony Sanchez, and Simon Garcia). These files were found to be in violation of F.S. 827.071. One of the Facebook users who "Austin Rose" sent these illicit files to was:

First Name: Ramiro
Last Name: Acosta
Email: Ramiro.acosta@cecar.edu.co
Age: 21
DOB: 1988-01-31
Profile URL: http://www.facebook.com/ramiro.acosta.102977
IP Address: 191.95.19.238
IP Capture Date: November 6, 2018 at 22:53:43 UTC

Facebook provided several dates/times for file uploads depicting the apparent child pornography in this CyberTipline Report that range from 05-18-2019 at 22:19:17 PDT through 07-12-2019 at 06:00:23 PDT.

Your Affiant conducted a MaxMind.com search of the above listed IP addresses (173.171.115.244 and 191.95.19.238) and learned that IP address 173.171.115.244 is assigned to Charter

3

Communications (Davenport, FL) and IP Address 191.95.19.238 is assigned to Tigo Colombia (Barranquilla, Atlantico, Colombia).

CyberTipline Report #50486542:
User or person being reported:
Name: Ramiro Acosta
Date of Birth: 01-31-1998
Approximate Age: 21
Email Address: Ramiro.acosta@cecar.edu.co
ESP User ID: 100028205776471
Profile URL: http://www.facebook.com/ramiro.acosta.102977
IP Address: 191.95.19.238
(Login) on 11-06-2018 at 22:53:43 UTC

Recipient of the Reported Content:
First Name: Austin
Last Name: Rose
Email: austinrose9990@yahoo.com
Age: 39
DOB: 1980-06-01
Profile URL: http://www.facebook.com/austin.rose.125760
IP Address: 173.171.115.244
IP Capture Date: June 14, 2019 at 15:14:30 UTC

Your Affiant viewed the files within this CyberTipline Report and observed that user "Austin Rose" received at least three video files depicting pre-pubescent children either exposing their genitals in a lewd manner or they were engaged in sexual contact with apparent adults from Facebook user "Ramiro Acosta." One of the files your Affiant observed was a video of an apparent adult female performing oral sex (mouth to vagina contact) on two separate pre-pubescent females. Another file your Affiant observed was a video file with the title "VALYA 10 ANOS ANAL TOTAL" (translated – Valya 10 years old total anal) which depicts an apparent adult male penetrating a female's (approximately ten years old) anus with his penis. Another file observed was a compilation video file, which contained several different video clips of pre-pubescent children being sexually battered by adults and/or engaged in sexual act(s) with other children and/or displaying/penetrating their genitals (vagina and/or anus) in a lewd manner. These files were found to be in violation of F.S. 827.071.

CyberTipline Report #53531060:
User or person being reported:

4

Name: Ramiro Acosta
Date of Birth: 01-31-1998
Approximate Age: 21
Email Address: Ramiro.acosta@cecar.edu.co
ESP User ID: 100028205776471
Profile URL: http://www.facebook.com/ramiro.acosta.102977
IP Address: 191.95.19.238
(Login) on 11-06-2018 at 22:53:43 UTC

Recipient of the Reported Content:
First Name: Austin
Last Name: Rose
Email: austinrose9990@yahoo.com
Age: 39
DOB: 1980-06-01
Profile URL: http://www.facebook.com/austin.rose.125760
IP Address: 173.171.115.244
IP Capture Date: August 12, 2019 at 09:28:08 UTC

Your Affiant viewed the file contained within this CyberTipline Report and observed that user "Austin Rose" received a single video file depicting a pre-pubescent female child being vaginally penetrated by an apparent adult male's penis from Facebook user "Ramiro Acosta." This file was in violation of F.S. 827.071.

On 10-24-2019, your Affiant submitted the subpoena to Charter Communications via their law enforcement web portal (Charter Communications case number 91864) requesting subscriber information for the account that was assigned IP address 173.171.115.244 on 06-14-2019 at 03:14:30 GMT.

On 10-28-2019, your Affiant received the subpoena results from Charter Communications. After reviewing the results, I learned the following:

Subscriber Name: Cassandra Escobar
Address: 328 Jyoti Drive, Davenport, FL, 33837
Phone: (787) 515-2628
Account Number: [redacted]

Surveillance was completed on the residence on several different dates and times; however, no persons were observed at the residence. On one occasion, your Affiant observed two vehicles parked in the garage of the residence, and after conducting a D.A.V.I.D. search of the tag numbers, your Affiant learned that one of the vehicles is registered to Edgardo Acevedo and the

other vehicle is registered to both Edgardo Acevedo and Cassandra Escobar. Your Affiant checked for open Wi-Fi while in front of the residence, and was not able to locate any open Wi-Fi accounts. All available Wi-Fi networks in the area were secured with a password/passcode.

On 04-30-2020, your Affiant submitted a second subpoena to Charter Communications via their law enforcement portal (Charter Communications case number 107188) requesting account information regarding subscriber and IP address history in reference to Charter Communications Account #630681801.

On 05-04-2020, your Affiant received the subpoena results from Charter Communications. After reviewing the results, your Affiant learned that IP address 173.171.115.244 was in-service at the residence located at 328 Jyoti Drive in Davenport from 09-20-2018 through 04-30-2020.

On 05-20-2020, your Affiant authored a search warrant requesting to search the residence located at 328 Jyoti Drive in Davenport (and any electronic devices located therein) for any items of evidentiary value relating to this investigation. The search warrant was read (and approved) by the Honorable Judge Radabaugh on 05-20-2020 at 1219 hours.

On 05-21-2020, Polk County Sheriff's Office Computer Crimes (CCU) Detectives responded to the residence located at 328 Jyoti Drive, Davenport, Polk County, Florida, and executed the lawful search warrant on the residence at approximately 0722 hours. Two juveniles were located inside the residence. Once the residence was cleared and deemed safe, the children were escorted back into the residence, Cassandra Escobar Caban and Edgardo Acevedo Cancela later arrived at the residence, and upon their arrival, your Affiant read them the search warrant and their *Miranda* rights.

Your affiant conducted a recorded interview with Edgardo Acevedo Cancela regarding this investigation; however, he denied having any involvement with child pornography and requested to speak to an attorney.

Due to the fact that there were two children in the residence (one boy and one girl) who were approximately the same age as some of the child victims observed in the videos in the CyberTipline reports that were in violation of F.S. 827.071, an exigent request was sent to Yahoo (Oath Holdings) seeking

6

subscriber information regarding the email provided in the CyberTipline Reports (austinrose9990@yahoo.com), Oath Holdings responded and provided the login activity and the subscriber details (which included the phone number (787) 624-9498) used to verify the email account.

Once the phone number was obtained, law enforcement resources were used to determine that the phone number (787) 624-9498 was Edgardo Acevedo Cancela's previous cell phone number.

After learning this information, your Affiant spoke to Edgardo's wife (Cassandra Escobar Caban) and she confirmed that (787) 624-9498 was in fact one of Edgardo's previous cell phone numbers.

As a result of this investigation, it has been determined that the suspect (Edgardo Acevedo Cancela) violated F.S. 827.071(3), promoting the sexual performance of a child, five times due to the fact that he utilized an electronic storage device to promote a sexual performance of a child[.] [K]nowing the character and content thereof, he promoted a performance which includes sexual performance of a child less than eighteen years of age due to the fact that he sent five files depicting a pre-pubescent female inserting an object into her vagina to several other Facebook users.

It has also been determined that Edgardo Acevedo Cancela violated F.S. 827.071(4), possession with the intent to promote child pornography, five times due to the fact that he possessed files (videos) that in whole or in part, includ[ed] sexual conduct by children less than eighteen years of age.

Based on the above facts, Edgardo Acevedo Cancela was arrested and charged with five counts of promoting the sexual performance of a child in violation of F.S. 827.071(3) and five counts of possession with the intent to promote child pornography in violation of F.S. 827.071(4).

The Plaintiffs allege that the arrest affidavit contained material fabrications, misstatements, and omissions. (Doc. 1 at 6–7) The Plaintiffs allege that the affidavit failed to acknowledge that: (1) police did not discover any evidence of child pornography after searching the Plaintiffs' home, (2) police failed to discover that Acevedo Cancela abandoned

the telephone number (787) 624-9498, when he and his wife moved from Puerto Rico to Florida in February of 2018, (3) Acevedo Cancela only asked to speak with an attorney before consenting to a search of his mobile telephone and Apple watch and did not refuse to give consent, (4) Deputy Jones lied by implying that the Plaintiffs' children appeared in the videos of child pornography because the Plaintiffs' children were the same age as the children depicted in the videos; (5) Deputy Jones lied when he stated that Acevedo Cancela sent to other Facebook users five files that depicted child pornography and when he stated that Acevedo Cancela possessed files that depicted child pornography. (Doc. 1 at 7)

The Plaintiffs allege that, after Acevedo Cancela's arrest, deputies at the jail strip-searched, fingerprinted, and photographed Acevedo Cancela. (Doc. 1 at 8) The Plaintiffs further allege that Acevedo Cancela's wife fainted when police arrested him and that Acevedo Cancela felt so distraught after his arrest that deputies at the jail routinely monitored him to ensure that he did not commit suicide. (Doc. 1 at 8) Sheriff Judd held a press conference and publicly boasted about the arrest of Acevedo Cancela and other persons during an operation named "Operation Guardians of Innocence V." (Doc. 1 at 8) A prosecutor filed an information charging Acevedo Cancela with one count of promoting sexual performance of a child. (Doc. 1-9) A year and five months later, the prosecutor dismissed the charge, stating that "[s]ubsequent to the filing of the information, the State obtained additional evidence and determined that the charge cannot be proven beyond a reasonable doubt." (Doc. 1-10 at 1)

## STANDARD OF REVIEW

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "While legal conclusions can provide the framework of a complaint, they must be

supported by factual allegations." *Iqbal*, 556 U.S. at 679. When ruling on a motion to dismiss, a court must accept the allegations in the complaint as true and construe the allegations in the light most favorable to the plaintiff. *Luke v. Gulley*, 975 F.3d 1140, 1143 (11th Cir. 2020).

## DISCUSSION

### Documents Submitted by Plaintiffs

Plaintiffs attach to the complaint search warrants, the affidavits in support of the warrants, the arrest affidavit, police reports, and the information and the notice of dismissal filed by the prosecutor in Acevedo Cancela's state criminal case. (Docs. 1-2, 1-3, 1-4, 1-5, 1-6, 1-7, 1-8, 1-9, and 1-10) Because a document attached to a pleading is part of the pleading, the Court will consider the documents attached to the complaint when reviewing the Defendants' motion to dismiss. Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). *MSP Recovery Claims, Series LLC v. Metro. Gen. Ins. Co.*, 40 F.4th 1295, 1303 (11th Cir. 2022) ("'In deciding whether a complaint states a claim upon which relief may be granted, we normally consider all documents that are attached to the complaint or incorporated into it by reference.'") (citation omitted).

Because the Plaintiffs allege that the arrest affidavit contains false statements (Doc. 1 at 6–7), the Court will not treat any disputed statements in the arrest affidavit as true. *Edwards v. Dothan City Schs.*, 82 F.4th 1306, 1311 (11th Cir. 2023) ("When a document considered at the motion to dismiss stage contains 'ambiguities . . . subject to interpretation,' courts should interpret all ambiguities in the plaintiff's favor.") (citation omitted).

### Count One and Count Two

In Count One and Count Two, the Plaintiffs assert Deputy Jones violated Acevedo Cancela's federal rights by falsely arresting and maliciously prosecuting him. (Doc. 1 at 9–12) The Defendants argue that the Plaintiffs fail state a claim in Count One and Count Two because the complaint fails to allege facts that demonstrate that Deputy Jones lacked probable cause to arrest Acevedo Cancela. (Doc. 16 at 8–14)

Lack of probable cause is an element of both a malicious prosecution claim and a false arrest claim. *Williams v. Aguirre*, 965 F.3d 1147, 1157 (11th Cir. 2020) ("For [a malicious prosecution] claim, [the plaintiff] must prove both 'a violation of [his] Fourth Amendment right to be free of unreasonable seizures' and 'the elements of the common law tort of malicious prosecution.'") (citation omitted). *Marx v. Gumbinner*, 905 F.2d 1503, 1505 (11th Cir. 1990) ("A warrantless arrest without probable cause violates the Constitution and forms the basis for a section 1983 claim."). *Daniel v. Village of Royal Palm Beach*, 889 So. 2d 988, 990 (Fla. 4th DCA 2004) ("In a malicious prosecution case, the plaintiff must establish an absence of probable cause as an element of the tort . . . .").

"[T]he correct legal standard to evaluate whether an officer had probable cause to seize a suspect is to 'ask whether a reasonable officer could conclude . . . that there was a substantial chance of criminal activity.'" *Washington v. Howard*, 25 F.4th 891, 902 (11th Cir. 2022) (quoting *Dist. of Columbia v. Wesby*, 583 U.S. 48, 61 (2018)). Probable cause "'requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.'" *Wesby*, 583 U.S. at 57 (citation omitted). "Probable cause 'is not a high bar.'" *Wesby*, 583 U.S. at 57 (citation omitted). A subsequent dismissal of a criminal charge "does not negate the

existence of probable cause at the time of [the] arrest." *Harris v. Hixon*, 102 F.4th 1120, 1126 (11th Cir. 2024).

The Defendants argue that facts in the arrest affidavit demonstrated probable cause as follows (Doc. 16 at 10):

> [T]hrough the steps outlined in the background section of this motion, Deputy Jones had linked the "Austin Rose" account uploading child pornography to Facebook to [Acevedo] Cancela as: (1) the associated IP address belonged to the Charter account of Caban, who owned and occupied the same residence as [Acevedo] Cancela and thus could be reasonably assumed to share computers, (2) the time period in which the pornographic videos were uploaded was within the time that the IP address at issue was being used at the residence, and (3) the e-mail address linked to the "Austin Rose" account was set to be verified by a phone number linked to [Acevedo] Cancela. Deputy Jones further observed that the girl found in the residence was of a similar age to the girl he observed in the pornographic videos.

According to Defendants, "it can be reasonably inferred from these facts that [Acevedo] Cancela, as an owner and resident of the residence using an IP address through which child pornography had been uploaded to Facebook, did promote the sexual conduct of the child while knowing of the pornographic contents of the video." (Doc. 16 at 10–11) Also, the Defendants argue that "[p]ossession could be reasonably inferred from the fact that [the] IP address was uploaded from an account associated with the residence which [Acevedo] Cancela owned and occupied." (Doc. 16 at 12)

Plaintiffs argue that Deputy Jones unreasonably relied on the Facebook account to establish probable cause because a "bad actor" anywhere in the world can manipulate a Facebook account. (Doc. 18 at 3) Also, Plaintiffs argue that Deputy Jones failed to determine who accessed the Facebook account to upload and download the child pornography and that the Facebook account was associated with a telephone number that Acevedo Cancela had

11

abandoned over a year before the crimes occurred. (Doc. 18 at 3–4) Plaintiffs argue that a reasonable officer would have investigated any registered sex offender, who lived in Acevedo Cancela's neighborhood and who could have hacked Acevedo Cancela's internet service. (Doc. 18 at 5) Plaintiffs argue that Deputy Jones did not find any evidence of child pornography at the home, failed to rule out other suspects who could have uploaded and downloaded the child pornography, and instead fabricated probable cause because Acevedo Cancela refused to provide the password for his telephone and watch. (Doc. 18 at 3–7)

However, the arrest affidavit identified three "CyberTipline" reports. (Doc. 1-6 at 2–3) The first report stated that, between May 18, 2019, and July 12, 2019, a male named Austin Rose used the IP address, 173.171.115.244, to upload five files containing child pornography. (Doc. 1-6 at 2) Records subpoenaed from the internet service provider showed that, on June 14, 2019, the IP address, 173.171.155.244, was registered to Acevedo Cancela's wife at 328 Jyoti Drive, Davenport, Florida, 33837. (Doc. 1-6 at 3–4) Additional records subpoenaed from the internet service provider showed that, between September 20, 2018, and April 30, 2020, the IP address, 173.171.115.244, was registered at the same address. (Doc. 1-6 at 4) Deputy Jones observed two cars parked in front of 328 Jyoti Drive, Davenport, Florida, 33837, and motor vehicle records showed that Acevedo Cancela owned one car and co-owned the other car with his wife. (Doc. 1-6 at 4)

The "CyberTipline" report stated that the male named Austin Rose used a Facebook account to send and receive the files containing child pornography. (Doc. 1-6 at 2–3) The subscriber registered the Facebook account with the e-mail address — austinrose9990@yahoo.com. (Doc. 1-6 at 2–3) Records from Yahoo showed that the subscriber registered the e-mail address with the telephone number — 787-624-9498. (Doc. 1-

12

6 at 4) Acevedo Cancela's wife told Deputy Jones that the telephone number used to belong to Acevedo Cancela. (Doc. 1-6 at 4)

A reasonable officer could have relied on the "CyberTipline" reports, the records from the internet service provider, the motor vehicle records, and the records from Yahoo to conclude that there was a substantial chance that Acevedo Cancela used the Facebook account, connected to the IP address registered at his home address, to send and receive child pornography. *Washington*, 25 F.4th at 902. *See* § 827.071(1)(g), (h), (3), (4), Fla. Stat. (prohibiting a person from "deliver[ing]" or "distribut[ing]" a "motion picture" or "photograph" depicting sexual conduct by a child and "possess[ing]" with the intent to "deliver" or "distribute" a "photograph" or "motion picture" that contains child pornography). Even though the prosecutor dismissed the criminal charge because "[s]ubsequent to the filing of the information, the State obtained additional evidence and determined that the charge cannot be proven beyond a reasonable doubt" (Doc. 1-10 at 1), that subsequent determination did not render the facts in the arrest affidavit false. *Wesby*, 583 U.S. at 57; *Harris*, 102 F.4th at 1126.

The records did not demonstrate that a person used Acevedo Cancela's abandoned telephone number to send and receive the child pornography. The "CyberTipline" reports instead demonstrated that a person used a device connected to the IP address registered at Acevedo Cancela's home address to send and receive the child pornography. The "CyberTipline" reports demonstrated that the male sent and received the child pornography with a Facebook account. The Yahoo records demonstrated that the Yahoo e-mail address connected with the Facebook account was registered with a telephone number that previously belonged to Acevedo Cancela. The Yahoo records ruled out Acevedo Cancela's wife, the

other adult who lived at the home, as a suspect by demonstrating that both the Facebook account and the Yahoo e-mail address belonged to Acevedo Cancela. Although the state ultimately concluded that the evidence did not support the allegations, a reasonable officer could have concluded that these facts and circumstances demonstrated that there was a substantial chance that Acevedo Cancela used the Facebook account to send and receive the files containing child pornography. *Washington*, 25 F.4th at 902.

In the complaint, the Plaintiffs dispute the accuracy of the following statements in the arrest affidavit (Doc. 1 at 7):

> e.  Deputy Jones lied under oath when he alleged that it "had been determined" as a "fact" that Mr. Acevedo Cancela "utilized an electronic storage device to promote a sexual performance of a child . . . and sent five files depicting a pre-pubescent female inserting an object into her vagina to several other Facebook users" when he had no such facts; and
>
> f.  Deputy Jones lied under oath in the affidavit when he swore that Mr. Acevedo Cancela, as a fact, "possessed files (video) that in whole or in part, included sexual content by children less than eighteen years of age" when he had no such facts; and
>
> g.  Deputy Jones lied under oath in the affidavit when he stated "there were two children in the residence who were approximately the same age as some of the child victims observed in the videos . . .," implying that Acevedo Cancela's children were depicted in the videos when he already knew it wasn't so.

However, the "CyberTipline" reports, the subpoenaed records from the internet service provider, the motor vehicle records, and the records from Yahoo could have supported the conclusion that someone used the Facebook account that belonged to Acevedo Cancela to send and receive the files containing child pornography. Also, because Acevedo Cancela's children were ten and thirteen, and the "CyberTipline" reports indicated that the

files depicted "pre-pubescent children," Deputy Jones did not unreasonably state that "there were two children in the residence who were approximately the same age as some of the child victims observed in the videos." (Doc. 1-6 at 4) Deputy Jones stated that the presence of the children in the home justified his exigent request to Yahoo for the records (Doc. 1-6 at 4):

> Due to the fact that there were two children in the residence (one boy and one girl) who were approximately the same age as some of the child victims observed in the videos in the CyberTipline reports that were in violation of F.S. 827.071, an exigent request was sent to Yahoo (Oath Holdings) seeking subscriber information regarding the email provided in the CyberTipline Reports (austinrose9990@yahoo.com), Oath Holdings responded and provided the login activity and the subscriber details (which included the phone number (787) 624-9498) used to verify the email account.

Lastly, the Plaintiffs argue that Deputy Jones should have (1) investigated "any number of bad actors" who can manipulate a Facebook account from anywhere in the world, (2) identified who actually accessed the Facebook account using Acevedo Cancela's abandoned telephone number when the files containing child pornography were sent and received, (3) identified who actually possessed the device linked to the abandoned telephone number when the offenses occurred, and (4) identified any registered sex offenders who lived near Acevedo Cancela's home and who could have hacked the WiFi or the IP address at his home. (Doc. 18 at 3–5)

However, when arresting a suspect, "[i]t is not unusual to find at the scene of a crime evidence pointing in different directions, but '[a] law enforcement officer is not required to resolve every inconsistency found in the evidence.'" *Davis v. City of Apopka*, 78 F.4th 1326, 1335 (11th Cir. 2023) (citation omitted). "Because 'probable cause does not require officers to rule out a suspect's innocent explanation for suspicious facts,' a police officer need not resolve

15

conflicting evidence in a manner favorable to the suspect." *Washington*, 25 F.4th at 902 (quoting *Wesby*, 583 U.S. at 61). "[I]nstead of focusing on a single piece of evidence 'in isolation' and dismissing any evidence with 'an innocent explanation,' [a court] must look at the 'totality of the circumstances.'" *Washington*, 25 F.4th at 902 (quoting *Wesby*, 583 U.S. at 61–62). Because the facts and circumstances in the arrest affidavit supported probable cause, Acevedo Cancela's false arrest and malicious prosecution claims against Deputy Jones fail. *Richmond v. Badia*, 47 F.4th 1172, 1180 (11th Cir. 2022) ("[W]hen the government has probable cause to arrest someone, a false arrest claim necessarily fails."). *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1256 (11th Cir. 2010) ("[T]he existence of probable cause defeats a § 1983 malicious prosecution claim.").

Also, because at the very least the facts and circumstances in the arrest affidavit demonstrate arguable probable cause, Deputy Jones is entitled to qualified immunity. *Richmond*, 47 F.4th at 1181 ("Arguable probable cause exists where 'reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest' the plaintiff.") (citation omitted). *Grider*, 618 F.3d at 1257 ("Showing arguable probable cause does not, however, require proving every element of a crime. If the arresting officer had arguable probable cause to arrest for any offense, qualified immunity will apply.") (citations omitted).

**Count Three, Count Four, Count Five, Count Six, and Count Seven**

In Count Three, Plaintiffs assert a false arrest claim based on state law against Sheriff Judd. (Doc. 1 at 12–13) In Count Four, Plaintiffs assert a malicious prosecution claim based on state law against Sheriff Judd. (Doc. 1 at 14–15) In Count Five, Plaintiffs assert defamation and libel claims based on state law against Deputy Jones. (Doc. 1 at 15–16) In Count Six,

16

Plaintiffs assert an intentional infliction of emotional distress claim based on state law against Deputy Jones. (Doc. 1 at 17–18) In Count Seven, Plaintiffs assert a loss of consortium claim based on state law against Deputy Jones and Sheriff Judd. (Doc. 1 at 19)

Because the Court dismissed the Plaintiffs' federal claims in this action, the Court dismisses these remaining state law claims without prejudice for the Plaintiffs to seek relief in state court. *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1296 (11th Cir. 2018) ("When all federal claims are dismissed before trial, a district court should typically dismiss the pendant state claims as well. Although it is possible for the district court to continue to exercise supplemental jurisdiction over these pendant claims, if the district court instead chooses to dismiss the state law claims, it usually should do so without prejudice as to refiling in state court.") (citations omitted).

Accordingly, Count One and Count Two in the Plaintiffs' complaint (Doc. 1) are **DISMISSED** with prejudice for failure to state a claim. Count Three, Count Four, Count Five, Count Six, and Count Seven are **DISMISSED** without prejudice for the Plaintiffs to seek relief in state court. The Clerk is **DIRECTED** to **CLOSE** this case.

**DONE AND ORDERED** in Tampa, Florida on September 12, 2024.

_____
MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE